IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LEVAN M. PARKS,

    Plaintiff,

v.                                                                    Civil Action No. 5:15-CV-19

McKEEN SECURITY, INC. and
DAVID McKEEN, individually and as
President of McKEEN SECURITY, INC.,

    Defendants.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On January 20, 2015, Plaintiff Levan M. Parks filed a *pro se* complaint in the Circuit Court of Ohio County, West Virginia.[1] In his complaint, Plaintiff alleges that Defendant McKeen Security Inc. ("McKeen Security"), and Defendant David McKeen ("McKeen"), individually and as President of McKeen Security, discriminated against Plaintiff in violation of "[s]tate of federal law prohibiting discrimination based upon an employee's race."[2] On February 12, 2015, Defendants moved to remove Plaintiff's action to federal court.[3] U.S. District Judge Frederick P. Stamp referred this action to the undersigned to review Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2).[4] On March 3, 2015, Defendants filed a motion to dismiss.[5] On March 16, 2015, Plaintiff responded to

---

[1] ECF No. 1-1.

[2] Compl. ¶ 15.

[3] ECF No. 1-4.

[4] ECF No. 4.

[5] ECF No. 8.

Defendants' motion.[6] Defendants filed a reply to Plaintiff's motion on March 23, 2015.[7] Plaintiff's complaint and Defendants' motion are ripe for this Court's report and recommendation.

## II. FACTS

Plaintiff is an African-American male residing in Wheeling, West Virginia. Compl. ¶ 1. McKeen Security is based in St. Clairsville, Ohio, and David McKeen serves as President of McKeen Security. Compl. ¶ 2-3. McKeen Security provides security services for hospitals and other businesses. Compl. ¶ 4. According to Plaintiff's complaint, he worked as a security guard for McKeen Security for seven years. Compl. ¶ 5. Plaintiff alleges he worked "primarily at East Ohio Regional Hospital in Martins Ferry, Ohio and Ohio Valley Medical Center in Wheeling, [West Virginia]." *Id.* Plaintiff states that "[a]t all time during [his] employment McKeen knew that Plaintiff does not drive and only can work when and where he can get to work by bus or reliable transportation." Compl. ¶ 6.

According to Plaintiff's complaint, "[o]n or about July 13, 2012" Plaintiff was serving as shift supervisor and called for backup during his shift at East Ohio Regional Hospital. Compl. ¶ 7. Plaintiff contends that he "raised his voice in anger when his co-workers did not respond appropriately." *Id.* The complaint contends that, after this incident, Plaintiff was suspended pending an investigation "[w]ithout asking for his 'side of the story.'" *Id.* According to Plaintiff, the investigation determined that Plaintiff should not continue to work at East Ohio Regional Hospital and he was "transferred to a location where he could not get bus service by Mike Stauver, Director of Operations . . . ." Compl. ¶ 7-8. The complaint declares that "Mike Stauver had been openly

---

[6] ECF No. 12.

[7] ECF No. 13.

hostile to Plaintiff for years." Compl. ¶ 9. Plaintiff states that he was discharged after "advising he could not go to the new assignment because of lack of transportation . . . ." Compl. ¶ 10. The complaint contends that, instead, "Defendant could have waited to assign Plaintiff to a new opening in the Wheeling area along a bus route when it arose." *Id.*

Prior to Plaintiff's termination, Plaintiff "had complained to Defendants and then to the [U.S. Equal Employment Opportunity Commission] regarding the hostile work environment and Defendant's tolerance of other employees' disrespect for Plaintiff and the Defendants' disparate treatment of Plaintiff." Compl. ¶ 14. On October 15, 2014, Plaintiff's EEOC claim was closed because "the EEOC [was] unable to conclude that the information obtained establishes violations of the statutes." ECF No. 8-1. However, the EEOC did "not certify that the respondent [McKeen Security] is in compliance with the statutes." *Id.*

Plaintiff maintains that he "has applied repeatedly to Defendant for a new assignment when openings are advertised, but Defendant does not answer." Compl. ¶ 11. Thus, Plaintiff has been only able to gain part-time work at a lower wage. Compl. ¶ 12. The complaint states that "Defendants knowingly allowed Plaintiff to be re-assigned to an impossible location in order to have a reason to terminate Plaintiff's employment." Compl. ¶ 13. Plaintiff notes that Defendant McKeen and Director of Operations Mike Stauver are both white. Compl. ¶ 3, 8. The complaint concludes "that Defendants' acts and omissions violate State and federal law prohibiting discrimination based upon an employee's race." Compl. ¶ 15. Lastly, the complaint asks the Court for damages based on lost wages due to Plaintiff's 2012 discharge by Defendants.

### III. DEFENDANTS' MOTION TO DISMISS

**A. Contentions of the Parties**

In their motion to dismiss, Defendants raise three arguments. First, Defendants argue that Plaintiff's complaint, as to Defendant David McKeen, should be dismissed because he was not properly served and this Court lacks jurisdiction over him. Second, Defendants contend that Plaintiff's complaint fails to state a cause for discrimination and cannot satisfy Federal Rule of Civil Procedure 12(b)(6). Lastly, Defendants argue that Plaintiff's claim "must be dismissed under the plausibility standard espoused by the United States Supreme Court." ECF No. 9 at 9. In Plaintiff's response to Defendants' motion, he appears to supplement his original complaint by attaching handwritten allegations of various events of discrimination while employed by Defendants.

**B. Standards**

1. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) and 12(b)(2)

"A Rule 12(b)(5) motion to dismiss argues for dismissal based upon the insufficiency of service of process under . . . Rule 4." *Tucker v. Thomas*, 853 F. Supp. 2d 576, 582 (N.D.W. Va. 2012). Under Rule 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV P. 4(m). A "plaintiff[] bear[s] the burden of establishing that service of process has been effective." *Tucker*, 853 F. Supp. 2d at 587.

Rule 12(b)(2) provides for the dismissal of actions where there is a lack of personal jurisdiction. A federal court is without personal jurisdiction over a defendant unless the defendant has been served with process in accordance with Rule 4. *Brooks v. Richardson*, 478 F. Supp. 793, 795 (S.D.N.Y. 1979)

2. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). In evaluating a complaint for purposes of a motion to dismiss, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id.* (citing *Iqbal*, 556 U.S. at 677). Additionally, "the court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n. 26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir.2006)).

As previously noted, in addition to pleading "sufficient factual matter," a complaint must also "state a claim . . . that is *plausible* on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In other words, the complaint's factual allegations must produce an

inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd.*, 591 F.3d at 256 (quoting *Iqbal*, 556 U.S. at 680); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (finding a complaint inadequate because its allegations "fail[ed] to establish a plausible basis for believing . . . that race was the true basis for [the plaintiff's] termination.").

In the context of *pro se* litigants, pleadings are "'to be liberally construed . . . and . . . 'however inartfully pleaded, must be held to less stringent standards than formal pleading drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Further, in employment discrimination cases, a "plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002). In *Swierkiewicz*, the Supreme Court explained that a prima facie case of discrimination "is an evidentiary standard, not a pleading requirement . . . [therefore] the ordinary rules for assessing the sufficiency of a complaint apply." *Id* at 510-11.

**C. Discussion**

1. Defendants' Motion to Dismiss as to Defendant David McKeen for Lack of Personal Jurisdiction

Defendants contend that Defendant McKeen has not been served a summons or a complaint "by the methods proscribed in [Federal Rule of Civil Procedure] 4 . . . ." ECF No. 9 at 6. Therefore, Defendants move for McKeen to be dismissed from Plaintiff's complaint because, until Defendant McKeen is served with a summons and complaint, this Court lacks personal jurisdiction.

As stated above, Plaintiff has the "burden of establishing that service of process has been effective." *Tucker*, 853 F. Supp. 2d at 587. In Plaintiff's response to Defendants' motion to dismiss, he does not address whether he served Defendant McKeen. Thus, Plaintiff has failed to establish that

6

service of process to Defendant McKeen has been effective. Therefore, to avoid dismissal under the Federal Rules, Plaintiff must demonstrate good cause for insufficient service of process. FED. R. CIV P. 4(m). "In determining good cause, courts have considered I) whether the party exhibited reasonable diligence or made a reasonable effort to effect service, and 2) whether there is any prejudice to the defendants as a result of the delay." *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). With this in mind, *pro se* litigants are generally granted more leeway to correct deficiencies in service or process. *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993). However, this latitude "does not constitute a license for a plaintiff filing pro se to ignore the Federal Rules of Civil Procedure." *Id.* (quotation marks omitted).

Defendants purport that Plaintiff only served Defendant McKeen Security, not Defendant David McKeen. Federal Rule of Civil Procedure 4(e) provides that an *individual* may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV P. 4(e). Additionally, under Ohio and West Virginia law, in order to serve a corporation and an officer of that corporation as an individual, the plaintiff must serve the corporation and individual separately. *See* Ohio R. Civ. P. 4.2 and W. Va. R. Civ. P. 4(d). It appears to the undersigned that the *pro se* Plaintiff likely believed service to McKeen Security also satisfied service

7

to David McKeen. Although Plaintiff's lack of service of McKeen would appear to devoid this court of personal jurisdiction, "courts have held that the standards set by [Rule 4] should be liberally construed in order to allow personal jurisdiction in cases where the party has received actual notice and proper service may still be obtained." *Feingold*, 269 F. Supp. 2d at 276.

Here, Defendants have received actual notice. David McKeen serves as President of McKeen Security which Defendants concede has been properly served by Plaintiff. Further, in their motion to dismiss, Defendants suggest that this "Court lacks personal jurisdiction over [Defendant McKeen] *until* he is properly served with the Summons and Complaint." ECF No. 9 at 7 (emphasis added). From Defendants' motion, it seems their only objection is based on the technical requirements of Rule 4(m). Yet, because of the *pro se* Plaintiff's seemingly genuine attempt to serve both Defendants and lack of any apparent prejudice to Defendants as a result of the delay of service, the undersigned finds that Plaintiff has satisfied Rule 4(m)'s "good cause" requirement. However, for reasons appearing below, the undersigned recommends that this action be **DISMISSED WITHOUT PREJUDICE**.

2. Defendants' Motion to Dismiss for Failure to State a Claim

Under this claim, Defendants argues that Plaintiff has failed to state a cause of action for discrimination and has not alleged enough facts for Plaintiff's complaint to be plausible on its face. Specifically, Defendants claim that "Plaintiff fails to allege *any* fact that indicates any decision made by Defendants would not have been made but for Plaintiff's race." ECF No. 9 at 8. Even as a *pro se* Plaintiff, Defendants contend that Plaintiff failed to "meet the minimal standards required by" the Federal Rules of Civil Procedure. *Id.* at 9.

Plaintiff's complaint alleges that Defendants knew Plaintiff was unable to drive and unfairly

transferred him to a work location that he was unable to access by public transportation. Compl. ¶ 6-8. Consequently, Plaintiff was terminated from his security guard position and continues to apply for security guard positions at other accessible locations without success. Compl. ¶ 10-11. Plaintiff notes that he previously filed an EEOC claim alleging a hostile work environment and "disparate treatment." Compl. ¶ 14. The complaint concludes that Defendants' acts violate "[s]tate and federal law prohibiting discrimination based upon an employee's race." Compl. ¶ 15.

Although Plaintiff cites no specific law to support his allegations, based on Plaintiff's complaint, the undersigned believes that Plaintiff is likely alleging a claim under Title VII of the Civil Rights Act of 1964 ("Title VII") which makes it "an unlawful employment practice for an employer . . . to discharge any individual , or otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a). Therefore, in Plaintiff's complaint, he "was required to allege facts to satisfy elements on a cause of action created by" Title VII. *McCleary–Evans v. Maryland Dep't of Transp., State Highway Admin.*, ___ F.3d ____, 2015 WL 1088931, at *3 (4th Cir. 2015). Specifically, that Defendants "discharged" Plaintiff "or otherwise discrimat[ed]" against Plaintiff because he is African-American. *See id*; 42 U.S.C. § 2000e-2(a).

While Plaintiff alleges that Defendants' discriminated against him, he fails to allege sufficient facts in his complaint that he was discharged from his position because of his race. In his complaint, Plaintiff makes no allegations of any specific instances of discrimination. Plaintiff does state that Defendant McKeen and Director of Operation Mike Stauver are both white, and Stauver has been "openly hostile to Plaintiff" in the past, yet "those 'naked' allegations—a 'formulaic

9

recitation' of the necessary elements—'are no more than conclusions' and therefore do not suffice." *McCleary-Evans*, 2015 WL 1088931, at *3 (quoting *Iqbal*, 556 U.S. at 678–79).

For discrimination cases, the Supreme Court in *Swierkiewicz*, 534 U.S. 506, "applied a pleading standard more relaxed than the plausible-claim standard required by *Iqbal* and *Twombly*." *McCleary-Evans*, 2015 WL 1088931, at *5. Nevertheless, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz*, 534 U.S. at 511. After applying the standards found in *Twombly*, *Iqbal*, and *Swierkiewicz*, it is clear that Plaintiff's complaint "has not nudged [his] claims of invidious discrimination across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (internal quotation marks omitted).

In Plaintiff's response to Defendants' motion to dismiss, he appears to attach handwritten allegations of specific instances of discrimination and the preferential treatment of white employees while employed by Defendants. In summary Plaintiff alleges:

> On August 11, 2010, a white employee stole Plaintiff's "PR-24 out of [his] locker." ECF No. 12 at 1. Plaintiff was never told to write a report and no investigation was conducted. *Id.*
>
> On a document dated May 16, 2011, Plaintiff alleges "Director of Operations Mike Stauver always treated [Plaintiff] differently than . . . white security guard[s]." *Id.* at 2. Stauver allegedly "humiliated" and "threatened" Plaintiff on the phone and in Plaintiff's office. *Id.* During a shift, a white employee directly threatened Plaintiff and, after reporting the incident, Plaintiff was never instructed to write an incident report. *Id.* Plaintiff also alleges a white employee with "several violations" working at one hospital was successfully transferred to another hospital without issue.
>
> A second page dated May 16, 2011, alleges another white employee called Plaintiff a "dumb ass" and no disciplinary action was taken. *Id.* at 3.
>
> In a letter from Plaintiff to "Dave McKeen," dated March 9, 2012, Plaintiff stated that he feels "threatened and humiliated" and has "always been treated differently than other white security guards [and] by Mike Stauver." *Id.* at 7.

On a document dated March 12, 2015, Plaintiff alleges that he served as a supervisor for two years, but his salary remained at $8.70 an hour while other supervisors made $9.35 an hour. *Id.* at 9.

On a document dated March 12, 2015, Plaintiff alleges that a white security guard with "several violations" working at Ohio Valley Medical Center was transferred to East Ohio Regional Hospital without incident. *Id.* at 11.

Plaintiff attaches a discipline report dated July 16, 2012, alleging that, on July 13, 2012, Plaintiff "was observed yelling loudly at another McKeen Security Officer" and "was asked to be quiet" yet "continued to yell at the other officer in front of patients and staff." *Id.* at 12.

In a letter from Plaintiff to "Dave McKeen," dated July 16, 2012, Plaintiff stated that he did not have the opportunity "to give [his] account of what happened" on July 13, 2012, and the disciplinary report "was based on false allegations . . . ." *Id.* at 13.

Plaintiff attaches a letter dated July 19, 2012, from Michael Stauver, Director of Operations, offering Plaintiff another position "at Centre Foundry in North Wheeling/Warwood" working multiple shifts from midnight to 8:00 a.m. *Id.* at 15. In a separate document dated July 23, 2012, Plaintiff wrote Stauver that he cannot accept the position because "buses don't run at 12:00 a.m. or 8:00 p.m." *Id.* at 16. In another letter from dated July 26, 2012, Stauver informs Plaintiff that McKeen security "consider[s] that [Plaintiff has] voluntarily resigned [his] position with McKeen Security, Inc." *Id.* at 17.

Plaintiff attaches a September 28, 2012, decision by Administrative Law Judge William Byrne concluding that Plaintiff is not disqualified from receiving unemployment compensation because McKeen Security did not meet "its burden . . . that [Plaintiff] engaged in an act of misconduct that resulted in his de facto discharge." *Id.* at 21-22.

In a letter from Plaintiff to "Dave McKeen" dated January 5, 2013, Plaintiff wrote that "[e]very time a white security guard would commit violations or misconduct, Mike Stauver would find them another job . . . [and] [t]here are white security guards who have committed more serious violations and misconduct."

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint and any documents attached or incorporated by reference." *Bailey v. Virginia High Sch. League, Inc.*, 488 F. App'x 714, 715 (4th Cir. 2012). Yet, for a Rule 12(b)(6) motion, the Court cannot consider anything beyond the complaint or its attached documents "without converting the

11

motion into one for summary judgment." *Id.* at 716. Therefore, this Court can consider documents submitted by Plaintiff only if they have been incorporated by reference into the Complaint. Although this Court must liberally construe the *pro se* Plaintiff's complaint, "[b]y the same token, the federal courts may not be an advocate for a pro se plaintiff and must hold the complaint to certain minimal pleading standards." *Hongan Lai v. Dep't of Justice*, No. 5:13CV00033, 2013 WL 3923506, at *3 (W.D. Va. July 29, 2013).

Consequently, to consider the facts alleged in Plaintiff's response to Defendants' motion, the Court would be required to turn Defendants' motion to dismiss into a motion for summary judgment. *Bailey*, 488 F. App'x at 716, However, this option is inappropriate because "the parties have not had a reasonable opportunity for discovery." *Id.*

## V. RECOMMENDATION

Because Plaintiff's response to Defendants' motion cannot be considered as an attachment to his motion for purposes of surviving a motion to dismiss, Plaintiff has failed to allege sufficient facts to state a claim upon which relief can be granted. Thus, the undersigned recommends that Defendants' motion to dismiss, ECF No. 8, be **GRANTED** and Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** so that the *pro se* Plaintiff may refile his suit to raise factual claims in his complaint that were first presented in his response to Defendants' motion to dismiss.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this report and recommendation, file with the Clerk of the Court written objections identifying the portions of the report and recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted

to the District Court Judge of Record. Failure to timely file objections to the report and recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: April 9, 2015                    /s/ *James E. Seibert*
                                         JAMES E. SEIBERT
                                         UNITED STATES MAGISTRATE JUDGE